Uniform of Mattel Um There's... Yeah Because I put it back at the end of the room Oh, hey it helped Ok Ok I went Or I'll try again Ok The next case is number 09-1239 Crash Dummy against Mattel Mr. Davis Thank you your honor May it please the court My name is Theodore Davis I represent the appellate in this matter Crash Dummy Movie LLC Which is referred to in the party's briefs as CDM This appeal arises from a trademark trial and appeal board decision sustaining an opposition to CDM's application to register the Crash Dummies trademark for a line of toys and playthings The basis for the board's decision is is the rights, the claim rights of the appellee Mattel to the same mark Your honors, the parties agree on a number of material facts underlying this appeal They agree, for example, that for purposes of this proceeding that their marks are likely to be confused They agree that CDM's claim to date of priority is March 31st, 2003 the filing date of its application And they agree that Mattel's claim to rights date back to 1991 which is the date of first use of a predecessor Tyco And finally, Mattel does not challenge the board's finding in this case of a prima facie showing of abandonment based on three years worth of non-use of the mark in question The parties disagree, however, on whether Mattel was successfully rebutted the presumption of abandonment arising from that three years worth of non-use And the board's conclusion that Mattel did rebut that presumption is grounded in three errors that warrant reversal or at a minimum, a remand in this case First, the board erred as a matter of law in its application of the prima facie presumption of abandonment under Section 45 by considering evidence and testimony post-dating the third anniversary of the discontinuous of the marks in question Second, the board erred as a matter of law in conflating the two tests for abandonment found in Section 45 by considering testimony and evidence of residual goodwill in the inquiry as to whether abandonment had occurred as a result of non-use And then finally, under a proper application of Section 45, the board erred in finding that the presumption of abandonment in this particular case had been successfully rebutted Before you get into the meat of your argument can you help me out by making sure I understand the pertinent dates here that at least you feel are the key dates for us to keep in mind You mentioned, I think in your brief December 31st, 1996 as the last date of use Is that the position you want us to adopt as the outside time for use by Tyco? If your honor refers to, I believe it's page 13 of the board's decision The board made a series of factual findings as to when the mark was used last and when there was an intent to resume use The last date on which the board might have found there was either actual use or an intent to resume use is 1996 That's the last year referred to in the board's opinion For purposes of this appeal we are willing to accept December 31st of that year as the last date So that's the starting point for the three years as far as you're concerned Your honor, I think that's the only conclusion based on the board's findings of fact I'm just trying to get your position So the answer is yes, that's the starting point Yes, that's correct, your honor And the ending point is 2004 Is that when we all agree that there was activity by Mattel that would constitute an actual use again? I think Mattel would characterize it as the end of 2003 but that distinction is not relevant to these issues So, end of 2003, beginning of 2004 Yes, your honor I just wanted to understand if there's any disagreement on that because the various dates that get thrown around December 31st, 1995, 94 and so forth licensees of Tyco and so forth but you're saying you're willing to live with December 31st, 1996 for purposes of our analysis of this case as the last day of use Your honor, the last date referred to in the board's opinion is 1996 For purposes of this appeal, yes We're willing to live with December 31st of that year We've hit that 1998, in the middle of your concern we have extensive negotiations over this mark Why isn't that significant? With KB Your honor, I would disagree with your characterization of extensive negotiations There are two reasons why that is not a sufficient showing to rebut the prima facie showing of the Why did the negotiations fail? Your honor, there is testimony, but not the evidence the record evidence required by this court's decisions in reward Why does it fail? Because it is not a cognizable showing under this court's decisions There is a requirement that Mattel produce evidence as with the burden of production is all about Now, with respect to the testimony Even if testimony is accepted here as a substitute for the evidence required by this court's decision When you say evidence, I mean, testimony is normally regarded as a kind of evidence Do you mean documentary evidence? That's exactly what I mean, your honor And that is what the burden of production Do you question whether the negotiation happened? Your honor, I do because You don't think it happened at all? You think they're manufacturing this?  You want a letter In other words, if there was a telephone conversation between KB and Mattel Even if there was a three-hour telephone conversation That wouldn't be good enough? You think under the proper standards to constitute evidence of intent to resume? A three-hour telephone conversation versus a one-line letter You'd say the letter is the only evidence that would be admissible for this purpose? Your honor, I'm not even seeing even testimony Well, I understand, but I'm trying to get your position Yes, your honor, that is correct The burden of production means producing evidence And that is why this court refers to evidence now But again, when you say evidence Remember that courts, as you well know When courts say evidence, they sure do include testimony Not just documentary evidence So you have to be taking the position, as I understand it That the only kind of evidence that can be considered For purposes of rebutting the presumption of abandonment Is documentary evidence, period Your honor, there is no other reading of the burden of production That's your position? Yes, the burden of production And what case stands for that? This court's decision in Imperial Tobacco And I would refer your honor to page 1581 of that case In which this court observed In every contested abandonment case The respondent denies an intention to abandon its mark Otherwise, there would be no contest And that's certainly the case here In a verment of no intent to abandon Is a little more than a denial of pleading Which is patently insufficient to preclude summary judgment On the ground that the facts are disputed Right The registrant must put forward evidence Evidence, but under verment Is merely a position taken in pleading Or the equivalent thereof Evidence, such as the example I gave Which is a long, is a witness's testimony About a particular event From which, if you believe the witness One could infer an intent to resume That would not simply be an averment It would be in the form of testimonial evidence But it wouldn't be an averment of intent Right? Well, your honor Do you understand the distinction? I understand the distinction Now why do you say That that court's statement about averments Applies to the kind of testimonial evidence That I've just described In the hypothetical telephone conversation Well, your honor The language treats it as equivalent In averment of an intent to resume use And a denial in the pleading They're one and the same Right, but what I'm saying to you My submission to you is That if I testify About a telephone conversation That occurred back then I give you the Here's what was said between the parties and so forth From which someone could infer an intent to resume That's not an averment That's testimony about an actual event Yes And that is exactly the sort of testimony That was at issue in Imperial Tobacco In which there was a finding of abandonment As a matter of law Here the board accepted it And relied on it And we're reviewing Whether there's substantial evidence To support their decision Why isn't this part of the evidence? Your honor, the answer The answer is twofold The first is That this was the entirely passive receipt Of an overture from a third party Well, but of course We all know that the reason They decline To enter into some agreement Is because they intend to use the mark That's the testimony that we get And the board relies on If we accept that evidence is reliable Does that end your case? Because, of course It falls right in the middle of the period You want to show as abandonment It does not, your honor Because, again Just the passive receipt of a single offer Is not good enough Well, that isn't exactly what's happening here They didn't passively receive it They denied it According to their testimony Because they intended to use it Yes, your honor And that conduct does not compare favorably To the conduct of the mark owner In Imperial Tobacco Who affirmatively went out Or the conduct of the mark owner In the 11th Circuit case Well, but they explain that too They had some They were acquiring Tyco There was a period of corporate unrest That delayed some of their plans But clearly we have in 98 An intent to continue to use Your honor has referred to plans Those plans are not laid out anywhere in the record There is, for example No testimony of a timetable There's no testimony of a business plan Even the testimony Even if the court accepts the hearsay testimony In the absence of the record evidence What are those plans? So your case really turns on Whether we accept that evidence or not No, your honor, it does not The court can accept that evidence But it is not cognizable For the same reasons That the very same argument Was not accepted by the commissioner In the NRA New England Mutual Insurance case Which is cited in both of our briefs In which Mattel's briefs Just simply do not address If you're talking about retooling Being the reason In February of that year 1998 PTO submitted a new assignment notice To the PTO Saying it now owned the marks Why doesn't that corroborate a little bit What happens with KB? Because your honor, the transaction Took place in February of 1997 That was what the board found That was what that submission To which your honor refers Says, and indeed on page 7 Of Mattel's brief Mattel acknowledges that the transaction Took place in 1997 But your honor There's still We're starting to get a little more evidence That they're not abandoning that Your honor, the nature of the evidence required Is evidence of an intent To resume use of the mark Of concrete plans What your honor is referring to Is not something that reflects that intent It is an assignment document Of over 340 registrations It is not evidence Of an intent to resume use As to any single one of those registrations All right Thank you Mr. Davis To save you rebuttal time Next we have Mr. Ripley Thank you May it please the court The board should be affirmed Because substantial evidence Supports the board's finding That Mattel did not abandon The crash dummies marks And because the board Did not commit any legal errors The CDM has attacked The standard of review And indeed the very standard On which the board made its decision Which was the totality Of the circumstances standard CDM has said that we've made that standard Up out of whole cloth Mr. Ripley The unusual event here It seems to me Is that the registration Was actually cancelled Yes And therefore The public Is a publicly known act Seeing that it's been cancelled That use is not resumed Within three years Isn't there something there Which weighs against the equities Of all the equities Is there of the continuing Accepting Someday we'll use this mark again The cancellation of the registration Is the only fact Of the 16 different factors That the board looked at That could possibly be argued To support that If you're going to talk about The balance of the interest Between Mattel and between CDM One has to look at the interest On both sides Mattel here Mattel had acquired The third largest toy company In the world Tyco And one of the three principal properties That identified In acquiring Tyco Was the Crash Dummies franchise Along with Matchbox Toys And the Radio Control There was obviously A very valuable property That had residual goodwill From that $50 million of sales In its first year To a $120 million worldwide Franchise There's no attempt To keep the mark alive There's no token use apparently No refiling with intent to use Certainly your honor Token use wouldn't be sufficient And there's a difference Between the mark The common law rights in the mark Which are being asserted here And the registration Certainly Mattel Recorded its assignment Of those registrations In February of 1998 And that was a signal It was 98 not 97 right? That's correct And you can find that At 838 right? That's correct your honor And so we had several things Going on there in 1998 Where we also had The proposal from KB Toys And this is not a case like ITC Is there any documentary evidence To corroborate that? The evidence is solely the testimony Of Mr. Frank And counsel repeatedly said That that testimony was just hearsay The problem with characterizing That evidence as hearsay Is they never objected To Mr. Frank's testimony as hearsay During his testimonial deposition Where that could have been addressed  As hearsay in their trial brief They never objected to his testimony As hearsay below at all They waived the hearsay objection They did however object On the basis of competence The judge overruled that objection And they've not renewed That competence objection here So they've waived the competence objection There is no objection To Mr. Frank's testimony That's properly before this court And Mr. Frank's testimony About the KB Toys analysis Stands unrebutted And what he testified was That it was not just The mere passive receipt Of an unsolicited proposal What Mattel did Is they went back And they looked at these molds That it had acquired Ten months later After it acquired The Marks In February of 1997 It wasn't until ten months later It acquired the actual business Of Tyco So what it did in 1998 Is it went back And it looked at those molds And said you know what Those molds are not going to do We've got to have new molds To meet our stringent safety standards It looked at what the cost Of developing those new molds would be Contrasted those new molds With the deal that was proposed By KB Toys Remember KB Toys was proposing An exclusive deal with KB Toys And they said the volume That KB Toys is currently experiencing Is not going to be sufficient enough To justify us having to retool That entire line Because remember just two years later Why was the Mark cancelled in 1999? I'm sorry pardon? Why was the Mark cancelled in 1999? Because they did not file The section 8 and 15 affidavits That said that they had been Continuing use And in fact they hadn't been Continuing use So they couldn't file those affidavits So they went ahead In 1998 And did that calculus Where they examined that potential use And it was just two short years later In 2000 they started this process Of research and concept approval And recall Mr. Frank's testimony About the concept approval Management said no You've got to go back to research And expand the line We want a greater use Of the Crash Dummies franchise So they went back to research They did the development They got the management approval To proceed to production And into sales And they were well along In that process Before CDM ever filed Its intent to use application Now remember CDM filed An intent to use application They've never used this Mark On these products But CDM has a long history here Because CDM had a film option With Tyco Where CDM recognized Acknowledged that Tyco kept the rights To the toys And that was the film option That expired in the middle of 1996 Tyco said to CDM You didn't live up to the agreement We're not going to renew the option We are going to find somebody else To do the film option And so then CDM comes back And files an intent to use application While Mattel is in the middle Of this complex process That took it three years Yes, but what it did Was it expanded the Crash Dummies Mark So it sold almost 2 million units Of these Crash Dummies products And it wasn't just the Crash Dummies figures They expanded the line To include vehicles, cars, a bus A launcher to launch these vehicles To simulate the crash It dramatically invested So when you're talking about fairness And equity and expectations This is not a case Where there's any warehousing Like has been implied in the briefs Or hoarding of marks This is a case that the board found There was a constancy of effort The board found that there was no abandonment The board found that there was no intent to abandonment That those are all factual findings That are supported by substantial evidence in the record The board refers at one point To industry recycling practice What case law supports that As a factor to be considered? Well, there's case law going both ways on that And we're not so much relying On the specific case law that supports that But on the specific facts of the testimony Mr. Frank talked about how Mattel As well as others in the industry Had this long practice of recycling popular toy franchises And they recognized when they purchased Tyco That it was a phenomenally successful franchise And it was a phenomenally successful toy pattern They talked about the play pattern of crashing And it was something that they went back to Just a few short years after that acquisition So recycling of the toy brands Was supported specifically by the testimony of Mr. Walsh And specifically by the testimony of Mr. Frank Mr. Davis argues that the Imperial Tobacco case And others stand for the proposition that I hope I don't mischaracterize this position That documentary evidence is acceptable But that testimonial evidence of intent is not acceptable To establish non-abandonment That's flat out wrong That Imperial Tobacco, as the court noted It was a mere averment case What we have here is not a mere averment Of an intent to resume use What we have is unchallenged testimony About facts or circumstances As the statute says From which Mattel's intent not to abandon Can be inferred Do you have anything besides Dr. Frank In the period from 96 to 99? Absolutely Mattel went in and recorded the assignments Of those marks Did it record the assignment of all of the marks That it obtained from Tyco globally? Yes As opposed to saying Here are 3, 6, 9, 12 marks that we want to preserve? Yes it did So they just took their entire package of marks And recorded them? Correct That may not be terribly probative Of what they intended to do With respect to a particular subset Of the entire group of marks But it is some evidence And the board looked at As I said before 16 different factors It looked at really all of the circumstances Actually I was interested in your answer To Judge Rader's question as well I interrupted So you said there's Other than Dr. Frank There's the registration What else? Then there's the KB Toys analysis That's only in Frank We only have that for him Correct But it's uncontradicted And at that point We skip forward to 2000 Where we have the ideation research The concept approval More research And the only evidence of that again Is Dr. Frank Correct The uncontradicted testimony of Mr. Frank Is it Mr. or Dr.? Mr. He's the marketing manager For these particular products So it's Mr. Frank And like I said His evidence was not contradicted And it was not objected to below So Imperial Tobacco Does not render that a mere affirment It is testimony of circumstances From which Mattel's intent Can be inferred Imperial Tobacco is important For one other reason That the court shouldn't just focus Arbitrarily on any three-year period What it should do Is it should look At the entire period of non-use And any other circumstances Before or after that period of non-use That would suggest That Mattel had this intent And a classic example Is residual goodwill Based on facts that happened Before the period of good use There was residual goodwill That was recognized By this court in the Cerveza-Ria case In footnote 2 That that residual goodwill Can be a strong motive To resume use of the mark And it can be a circumstance That can be combined with others To support an intent To resume use But more importantly Going back to Imperial Tobacco The court said at page 1581 That it would look from the mark owner Mark owner's evidence With respect to what activities It engaged in During the non-use period Or what outside events Occurred from which An intent to resume use During the non-use period Reasonably may be inferred Actually the court said May reasonably be inferred But I didn't want to split the verb So the statement The statement that The court can only look at circumstances During the statutory three-year period Is flat out inconsistent Both with the statute And with this analysis In the Imperial Tobacco case Mr. Rookwood Perhaps it's peripheral But you keep telling us That there was no objection To this or that This was a proceeding Before the TTAB And my recollection Unless it's changed Is that the evidence Is presented to the board But it's not a district court proceeding Where you raise objections And then argue about admissibility And all the rest of it The information is presented to the board That weighs it Applies the standards That are appropriate At that level of decision But you've told us Several times this morning Or this afternoon That since no objection was raised We should somehow look at What you've told us Was presented in a different way Your Honor, the board Applies the federal rules of evidence And you'll see that the board Does the board argue about admissibility Particularly during the course of their proceedings? That's not correct, Your Honor If you look at the board's opinion Early on the board went through And addressed all of the objections That had been raised To both the individual documentary exhibits And to the testimony of the witnesses And you'll see that it addressed For example The objection to the competency Of Mr. Frank's testimony And overruled that objection And you'll also see That there's no discussion In the board's opinion Of any objection to Mr. Frank's testimony On hearsay Because there was no such objection made And the board was very careful To point out And I see my time has expired And I'll just ask that the board be affirmed Let me just If I could just ask one further question You've mentioned now twice competency I mean I take it that Maybe that the board referred to it as competence But it really is lack of personal knowledge, right? That was the objection Right During the deposition That was raised Was competence Which is what we normally think of As being encompassed within hearsay No, competence is rule 602 Hearsay is going to be rule 803 It's a completely different objection Well, what I'm saying Yeah, yeah But what I'm saying is They said lack of I'm just reading from what the board says The board says that the objection Was based on lack of personal knowledge And that's overruled And then the board said We find both are sufficiently competent Now the board may have made a mistake In diction In calling it competence As opposed to admissibility for personal knowledge But if it in fact In fact It was an objection based on lack of personal knowledge That sounds an awful lot like an objection Based on hearsay Wouldn't you agree? Well, it might be the case If there was in fact a basis for that In the trial brief But if you look at the trial brief The only objection that is raised Is in fact competence So it wasn't just mere semantic problems with the board It was the fact that the trial brief raised Competence There was no objection on hearsay During the testimonial deposition There was no objection based on hearsay In the trial brief The board didn't feel that it needed To get to address the hearsay objection at all And this is all deposition testimony Yes, that's correct Well, let's hear That's right, we haven't heard it for a while I'm sorry Thank you Thank you, Mr. Rutledge Mr. Davis Your Honor, to address Imperial Tobacco First, I refer the court to page 1582 Of the Imperial Tobacco Opinion And it will be apparent from that page That that is not a case about a mere averiment Of an intent to resume use There is ample testimony and evidence Referred to on that page That distinguishes even that case In which there was abandonment as a matter of law From this case Also, it is not Imperial Tobacco or Rivard That defines the appropriate period as 3 years As this court's decision in Cerveceria I would refer the court to pages 1027 and 1028 Where the court refers to the then 2-year period That was set forth in section 45 And says, when no evidence of intent to resume Is offered for a period of proven use Of at least 2 years Then as to those years Not a reference to the entire length of time in question But as to those years referred to by section 45 Mattel is referred to a constancy of effort Found by the board The question remains though What was that effort? What steps were taken? In an earlier appeal To earlier arguments The court referred to 21 pages of fact-finding 150 pages of findings of fact Mattel here is referred to 16 factors Which of those factors relate to its conduct After acquiring these marks The court will find that there is nothing there If the court looks at the record sites in Mattel's brief Mattel has represented this court That it could not have filed the declarations of use Required by section 8 to maintain these registrations That is simply not the case Mattel could have filed declarations of excusable non-use That option is open to every registrant If it feels that it cannot make the showing of use Required by the statute That would be because of circumstances external to it But even if Mattel had filed such a document Indicating that its retooling costs Prevented it from putting this mark into use That still would have been inadequate And even if this court credits the testimony of Mr. Frank As to that point That still would have been inadequate Showing under the commissioner's decision An NRA New England mutual life insurance Which again Mattel simply has not addressed Finally, Mattel has referred to the totality of the circumstances test Not only in its brief but also in its oral argument Here is accused CDM of accusing Mattel Of having fabricated this out of whole cloth As it has in its reply brief CDM encourages the court to take a look at that case And the court will see that that case And the language upon which Mattel relies Rather than the language from this court's decisions Addresses a completely separate issue And that the test Mattel proposes Does not extend even in the Ninth Circuit And certainly should not be applied here At the expense of this court's own decisions Thank you Okay, thank you Your Honor, I must call to the court's attention I misspoke The court asked me whether it was a general or specific Would you come forward so we can record what you're saying Your Honor, I apologize, I misspoke The court asked whether it was a general or specific assignment The court will see from pages A839-840 That the assignment was just directed To the crash dummies The incredible crash dummies, Mark Okay, thank you Now, Mr. Rutledge, before you go We have a question for both of you We've noticed that there are numerous designations Of confidentiality in both briefs We have no interest in publishing confidential information But it is difficult to discern For some of the designations What the reasons are Some such as sales volume or whatever Are clear Can we ask both of you To go through the briefs With a sharp pencil And tell us what needs to be preserved As confidential So that we don't inadvertently Somehow publish something else But again, some of the things Which seem to be marked or placed in brackets Or whatever Are very curious Would the court like individual letters Or a joint letter from the parties? Whichever is easier for I suppose it's easier for us Since you may both have had a hand in each other's briefs If we received one combined When would the court like that? Well, without placing an undue burden A week, ten days A week would be fine If you would go through the briefs And just mark them up And remove what's removable So that we can understand where we stand Your Honor, the designations are exclusively Mattel's So we will defer to Mattel That would make it easier? Yes We'll do that Okay Thank you, Your Honor Good, thank you both The case is taken under submission